# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2010

## STATE OF TENNESSEE v. EARNEST ULYESSEE McEWEN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-A-554      Seth Norman, Judge**

**No. M2010-00135-CCA-R3-CD - Filed June 3, 2011**

Defendant, Earnest Ulyessee McEwen, appeals the trial court's revocation of his community corrections sentence. In 2006, Defendant was indicted for burglary and theft of property over $1,000. Pursuant to a negotiated plea agreement, Defendant pled guilty to burglary and was sentenced to twelve years as a career offender with one year to serve in confinement and eleven years on community corrections, and the theft charge was dismissed. A warrant was issued charging Defendant with a violation of his community corrections sentence. Following a hearing, the trial court revoked Defendant's sentence and imposed his original twelve-year sentence, to be served in confinement. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Dawn Deaner, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender; and Kevin Kelly, Assistant Public Defender, for the appellant, Earnest Ulyessee McEwen.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and J. W. Hupp, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Factual Background*

On July 17, 2006, Defendant pled guilty to burglary, a Class D felony, and was sentenced to twelve years as a career offender. The trial court ordered Defendant to serve

one year in confinement and suspended imposition of the remaining eleven years of his sentence pursuant to the Community Corrections Act.

On November 4, 2009, a warrant was issued alleging that Defendant had violated the conditions of his sentence by failing to show for a scheduled office visit, failing to attend a group counseling session, and failing to provide proof of employment.

At a hearing, community corrections officer Brandi Jimmerson testified that she had been supervising Defendant since October 22, 2008. Upon his acceptance into the program supervised by Ms. Jimmerson, Defendant had successfully completed an in-patient drug treatment program.

Ms. Jimmerson had issued a previous warrant against Defendant on May 27, 2009, for failing to provide proof of employment and failing to pay his supervision fees and restitution, and his community corrections sentence had been reinstated.

Ms. Jimmerson testified that as part of the conditions of Defendant's sentence, he was required to report to her every Monday and attend a group counseling session every Wednesday. In the week prior to issuing the warrant, Defendant called her three times to reschedule an office visit, and on the third scheduled appointment, Defendant never showed up and Ms. Jimmerson was unable to contact him the rest of the week. He also failed to report to the office visit scheduled for the following week. After Ms. Jimmerson tried unsuccessfully to contact him again, she filed a warrant for violation. Defendant also failed to attend a scheduled group counseling session that week. She testified that Defendant had reported that he was employed at Big A Tires, and he turned in three check stubs in August, 2009, but he never turned in any more pay stubs. Ms. Jimmerson requested that he produce a copy of the company's business license, which Defendant never produced. Defendant later reported that he had been laid off.

Ms. Jimmerson testified that Defendant had been compliant prior to the missed appointment and counseling session and that he had been given drug screens, for which he consistently tested negative. She testified that on December 27, 2008, while under her supervision, Defendant was arrested for trespassing, but that a warrant for violation was never issued.

Ameed Abdulla testified that he is an owner of Big A Tires. Defendant had approached him asking for a job, and Mr. Abdulla agreed to hire him for part-time work in August, 2009. He testified that Defendant worked for him for about one month, and he paid him in cash. He testified that he had to "let [Defenadnt] go" in October because business was slow.

Alisha Smith testified that she is Defendant's fiancé and that she had known Defendant for about two years. She testified that she and Defendant had a one-week-old baby. She testified that during her pregnancy, Defendant was helpful and went with her to several doctor appointments. She testified that since Defendant had been unemployed, he had been actively seeking employment. She testified that she was hospitalized on October 28, 2009, and Defendant stayed with her at the hospital until she was discharged later that same night. She also testified that she experienced high blood pressure and dizziness during her pregnancy, and Defendant had taken her to the doctor several times for that. She testified that Defendant did not use any drugs.

Defendant testified that he had difficulty obtaining employment. He worked at Big A Tires for a while. Regarding the week during which he failed to report, Defendant testified:

> Basically what happened that week is like my fiancé said, is she was sick. But what really happened is that I think I got stressed out that week. I was trying to run, I was trying to look for a job, trying to seek this employment before my day to, you know, my last day before the 26th she told me to have a job or I would be violated. So I was basically trying to make in between here and there and we also end up going to get public assistance for rent, for the light bill or whatever.
>
> So between all of this, you know, I was looking for employment. I tried to, you know, do the best I can. I always reported to her.

At the conclusion of the hearing, the trial court made its findings:

> [Defense counsel], just how many chances do you think an individual deserves? This record is shot full of failures to appear, probation violations. This is the third Community Corrections violation. How can the Court expect him to do anything, with his record? What have you shown me today that would convince me that it's going to be any different than it's been for the last 20 years with him?
>
> I understand about getting a job, I understand about it being difficult for a person in his position to be hired, but he put himself in that position, [Defense counsel]. Community Corrections violation warrant is sustained, the third one, the sentence is placed into effect.

*Analysis*

The Community Corrections Act of 1985 was designed to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community-based alternatives to incarceration ." T.C.A. § 40–36–103. The community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant and serve legitimate societal aims. *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements, however, the defendant is not necessarily entitled to a community corrections sentence as a matter of law or right. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Once a defendant violates the terms of his community corrections program, the trial court may revoke the sentence and impose a new one:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in the community-based alternative to incarceration.

T.C.A. § 40–36–106(e)(4). In other words, the trial court may conduct a sentencing hearing, and may impose a greater sentence than the original sentence. *Griffith*, 787 S.W.2d at 342; *State v. Cooper*, 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998).

In *State v. Harkins*, 811 S.W.2d 79 (Tenn. 1991), our supreme court ruled that a community corrections sentence is so similar to a probationary sentence as to require the application of the same standard of review. *Id*. at 82. Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. T.C.A. § 40–35–311(e); *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated the terms of his sentence. *Harkins*, 811 S.W.2d at 82 (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when " 'the trial court's logic and reasoning was improper when viewed in the light of the factual circumstances and relevant legal principles involved.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). It is incumbent upon the trial judge to exercise

a conscientious and intelligent judgment. *See State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

Defendant recognizes that a trial court's discretion to revoke a community corrections sentence shall be upheld unless the record contains no substantial evidence to support the court's determination that a violation occurred. However, Defendant argues that Defendant had reasonable excuses for his failure to report and failure to maintain employment. Defendant submits that the record shows that his violations were "the product of poverty and misfortune and did not justify the trial court placing his entire sentence into effect."

We conclude that the trial court did not abuse its discretion in revoking Defendant's community corrections sentence. Defendant concedes that he failed to report as required, that he failed to attend a counseling session as required, and that he failed to maintain and provide proof of employment.

## CONCLUSION

After a thorough review of the record, we affirm the trial court's revocation of Defendant's community corrections sentence and imposition of a twelve-year sentence of incarceration.

_____
THOMAS T. WOODALL, JUDGE